# IN THE CIRCUIT COURT OF
# THE TWENTIETH JUDICIAL CIRCUIT
# ST. CLAIR COUNTY, ILLINOIS

MARTHA CUSTER; JANICE LYNN McCORN;
BRENDA MARIE BRINKLEY; GERLADINE LEWIS;
LAURA MAE CHAMBERS; EVELYN JUNE
NICHOLSON; RUBY LOUISE DAVIS; MAXINE
MARIE WILLIS; JACQUELYN CANADA; RETHA
MAE CONNORS; MARY HELEN JONES JOYNER;
ROSALIND MARIE HOLTON; PATRICIA JOHNSON;
BETTY JEAN JOHNSON; ZOLINDA GAII
CHAMBERLAIN; WERDONA KIMBERLY DOUGLAS;
HELEN JEAN BROADEN; THERESA HULL; BERNICE
GREEN; MINNIE RINTHY ROSTON; and PAMELA R.
HILL, all of whom are individuals residing in Illinois,

Plaintiffs,

vs.

CERRO FLOW PRODUCTS, INC., a Delaware
corporation with its principal place of business located in
Illinois; PHARMACIA CORPORATION, a Delaware
corporation; SOLUTIA, INC., a Delaware corporation;
PFIZER, INC., a Delaware corporation; and
MONSANTO AG PRODUCTS, LLC, a Delaware limited
liability company;

Defendants.

Case No. __0.9L295__

**Personal Injury:**
Count   I – Negligence
Count   II – Strict Liability
Count   III – Nuisance
Count   IV – Battery

**Property Damage:**
Count   V – Negligence
Count   VI – Nuisance
Count   VII – Trespass

JUN 0 5 2009

*Barb. F. Kelly*
CIRCUIT CLERK
ST. CLAIR COUNTY

# COMPLAINT

### Nature of this Action

1.      This action concerns the release into the environment of millions of tons of
polychlorinated biphenyls ("PCBs"), dioxins, furans, and other hazardous substances, other
than Agent Orange, (the "Released Substances" or "Substances") from multiple sites located in
St. Clair County, Illinois, in and/or near the Village of Sauget (the "Release Sites" or "Sites").
This action does not concern Agent Orange.

2.      The Release Sites include (A) an approximately ninety (90) - acre landfill
operated by Sauget & Co. (the "Sauget Landfill"); (B) the approximately three-hundred fourteen
(314) - acre W.G. Krummrich Plant, located at 500 Monsanto Avenue, Sauget, Illinois, operated

EXHIBIT A

by one or more of the Monsanto Defendants identified below (the "Monsanto Facility"); and (C) property abutting the Monsanto Facility, located at 3000 Mississippi, Sauget, Illinois and owned by Defendant Cerro Flow Products, Inc. (the "Cerro Facility").

3.      The release into the environment of Substances from the Sites (the "Release" or "Releases") has created and continues to create health risks for residents and has contaminated and continues to contaminate real property within a two-mile radius of one or more of the Release Sites (the "Affected Area"). The Affected Area encompasses Dead Creek, other nearby streams and ground water, the flood plain, the riparian shoreline, and recreational areas

4.      The Releases have occurred continuously for more than seventy (70) years, dating as far back as 1935 (the "Relevant Period").

5.      For decades, all Defendants have known or should have known about the health risks and real property contamination caused by the Releases.

6.      For decades, the Monsanto Defendants have actively concealed the health risks and real property contamination caused by the Releases.

7.      One or more of the Monsanto Defendants intentionally misled the public about the dangerous and hazardous nature of the Substances that were being released from the Release Sites. In this effort, they conspired with their agent, Industrial Bio-Test Labs of Northbrook, Illinois (hereinafter "IBT"), to falsely certify that the Substances being released from the Release Sites were not carcinogenic, despite empirical evidence to the contrary. Ultimately, IBT was at the center of one of the most far-reaching scandals in modern science, as investigations conducted by the United States Environmental Protection Agency and the United States Food and Drug Administration demonstrated that thousands of IBT studies were fraudulent.

### The Plaintiffs

8.      All of the Plaintiffs are citizens of Illinois.

9.      Some of the Plaintiffs (the "Personal Injury Plaintiffs") currently reside or have resided within the Affected Area during the Relevant Period and developed cancer and/or other

Complaint                                                                                                                2
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

serious and life-threatening diseases as a consequence of their exposure to the Released Substances.

10.     Some of the Plaintiffs (the "Property Damage Plaintiffs") own real property ("Real Property") within the Affected Area that has been damaged as a consequence of exposure to the Released Substances.

11.     Some of the Plaintiffs are both Personal Injury Plaintiffs and Property Damage Plaintiffs.

12.     No Plaintiff wants this cause of action consolidated with any other cause of action.

### The Defendants

13.     Defendant Cerro Flow Products, Inc. (hereinafter "Cerro"), a Delaware corporation, is an Illinois citizen by virtue of having its principal place of business at the above-described Cerro Facility in St. Clair County Illinois.

14.     The "Monsanto Defendants," identified in paragraphs 15-18 below, are or have been related corporate entities at various times relevant to this action.

15.     Defendant Pharmacia Corporation (hereinafter "Pharmacia") is a Delaware corporation transacting business in the State of Illinois. Its principal place of business is located at 235 East 42nd Street, New York, New York 10017. Pharmacia was incorporated on May 31, 1933 as Monsanto Chemical Company. On April 10, 1964, its name was changed to Monsanto Company, and on March 31, 2000, its name was changed to Pharmacia Corporation.

16.     Defendant Solutia, Inc. (hereinafter "Solutia") is a Delaware Corporation transacting business in the State of Illinois. Its principal place of business is located at 575 Maryville Centre Drive, St. Louis, Missouri. Solutia was incorporated on April 1, 1997 as a wholly owned subsidiary of Defendant Pharmacia. On September 1, 1997, Pharmacia distributed all of the outstanding shares of its common stock as a dividend to Pharmacia

Complaint                                                                                                                3
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

stockholders (hereinafter the "Solutia Spin-off"). As a result of the Solutia Spin-off, Solutia became an independent publicly held company and it ceased to be owned by Pharmacia.

17.     Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware Corporation transacting business in the State of Illinois. Its principal place of business is located at 235 East 42nd Street, New York, New York 10017. Pfizer was incorporated on June 2, 1942 as Chas. Pfizer & Co., Inc. On April 21, 1970, its name was changed to Pfizer Inc. Pfizer and Pharmacia began operating as a unified company on April 16, 2003.

18.     Defendant Monsanto Ag Products, LLC is a Delaware limited liability company transacting business in the State of Illinois. Its principal place of business is located at 800 North Lindbergh Boulevard, St. Louis, Missouri 63167. Monsanto Ag was organized on September 20, 1978.

## Jurisdiction and Venue

19.     This Court has personal jurisdiction over all defendants pursuant to 735 ILCS 5/2-209(a)(1-3), in that each cause of action alleged arises from the transaction of business in Illinois; the commission of tortious acts in Illinois; and/or the ownership, use or possession of real estate situated in Illinois.

20.     Venue is proper in St. Clair County, Illinois, pursuant to 735 ILCS 5/2-101, in that the causes of action alleged arise out of transactions that occurred in whole or in part in St. Clair County, Illinois.

21.     Plaintiffs seek damages against the Defendants, jointly and severally, with respect to each count of this Complaint, in an amount in excess of Fifty Thousand Dollars ($50,000.00).

Complaint                                                                                                    4
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

## BACKGROUND FACTS

### How the Releases Occurred

22.     At all times relevant to this Complaint until 1997, more PCBs were produced at the Monsanto Facility than at any other site in the United States, and perhaps even the free world. One or more Monsanto Defendants produced those PCBs.

23.     At all times relevant to this Complaint, one or more Monsanto Defendants have also stored and attempted to dispose of PCBs at the Monsanto Facility and at the Sauget Landfill.

24.     In the process of producing, storing, and/or disposing of PCBs at the Monsanto Facility, one or more Monsanto Defendants have released into the environment millions of tons of Substances.

25.     At times relevant to this Complaint, Cerro has engaged in copper recycling operations at the Cerro Facility.  As part of its copper recycling activity at the Cerro Facility, Cerro has (a) scrapped PCB transformers; (b) drained manufacturing wastewater and PCB oil into Dead Creek Segment A located on the Cerro Facility; and (c) landfilled Substances on the Cerro Facility, all of which activities caused releases of large quantities of Substances into the environment in the Affected Area.

26.     The mechanisms by which Defendants' conduct caused the Releases include, but are not limited to, the following:

A.      Fugitive emissions from manufacturing and packaging processes.

B.      Spillage.  For example, in the process of filling large storage tanks at the Monsanto Facility, Monsanto Defendants spilled Substances onto the ground surrounding the tanks, and through a process known as "volatilization," the spilled Substances were vaporized into the atmosphere and thereby released into the environment.

C.      The use, cleaning, and storage of leaking PCB transformers.

D.      The incomplete incineration of PCBs at the Monsanto Facility.

Complaint                                                                                          5
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

E.   The improper burning of waste contaminated with the Substances in pyrolytic equipment at the Monsanto Facility.

F.   The discharge into surface waters, ultimately resulting in the contamination of soil and dust and eventual re-suspension into the atmosphere.

G.   The discharge into wastewater systems, ultimately resulting in the contamination of water and soil and eventual re-suspension into the atmosphere.

H.   The improper disposal of waste contaminated with the Substances in landfills, including the landfill located on the Cerro Facility and the Sauget Landfill.

## How the Releases Have Contaminated the Environment

27.   Smokestack emissions, wind erosion, smoke from fires in the waste piles at the Monsanto Facility and other airborne Releases at the Release Sites have caused the Substances to spread to adjacent communities and be deposited onto the soils in those communities. Once the Substances contaminated the soils of the adjacent communities, the Substances were continuously entrained, re-suspended, and re-entrained into the atmosphere and environment of those communities.

28.   Releases of Substances from the Release Sites have also contaminated nearby waterways and groundwater, thereby spreading the contamination throughout the communities adjacent to the Release Sites.

29.   Releases of Substances from the Release Sites have also caused the Substances to be deposited on and within structures throughout the communities adjacent to the Release Sites and have thereby caused those structures to become contaminated with Substances.

30.   Substances that were released from the Release Sites continue even to this day to contaminate adjacent communities.

Complaint                                                                          6
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

## Why the Released Substances are Hazardous

31.     The Released Substances pose significant threats to human health.  It has been clearly established in peer review medical literature since at least 1937 that a link exists between the Substances and disease in humans.[1]  Exposure of humans to the Substances result in toxic effects in the brain and central nervous system, the peripheral nervous system, the kidneys, the liver, the immune system, the reproductive system, and the endocrine system.  In addition, low birth rates, birth defects, and numerous other chronic effects are caused by exposure to the Substances.

32.     PCBs are unreasonably dangerous and are known to cause or contribute to cause significant health problems in both humans and animals.[2]

33.     According to the United States Environmental Protection Agency, a lifetime dose of one (1) milligram of PCBs is sufficient to cause cancer and other serious and life-threatening diseases.  According to the World Health Organization, there is no safe level of exposure to PCBs.

34.     Dioxins are unreasonably dangerous and are known to cause or contribute to cause significant health problems in both humans and animals.[3]  In fact, the International Agency on Research for Cancer ("IARC") has classified 2,3,7,8-tetrachloro-p-dioxin as a Class I Known Human Carcinogen.  The toxicity of dioxins first became known more than 40 years ago, beginning in the early 1960's.

35.     Furans are unreasonably dangerous and are known to cause or contribute to cause significant health problems in both humans and animals.[4]  The unreasonably dangerous nature of furans was known no later than 1960.[5]

36.     Human exposure pathways include, but are not limited to, inhalation, incidental ingestion, dermal adsorption, and ingestion of homegrown produce.

Complaint                                                                                                      7
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

## Defendants' Knowledge of and Response to the Releases

37.     Defendants each knew or should have known that their conduct was causing the release of millions of tons of carcinogenic Substances into the environment.

38.     Despite knowing their conduct was causing the release of millions of tons of carcinogenic Substances into the environment in the Affected Area, one or more of the Monsanto Defendants and Cerro continued to produce some or all of the Substances thereby causing Releases.

39.     Despite knowing their conduct was causing the release of millions of tons of carcinogenic Substances into the environment in the Affected Area, one or more of the Monsanto Defendants and Cerro continued to dispose of Substances at the Release Sites, thereby causing Releases.

40.     Defendants never warned the residents of communities adjacent to the Release Sites, including the Plaintiffs, about the hazardous nature of the Substances that Defendants were releasing into the environment.

41.     Defendants have made no attempts to protect the residents of communities adjacent to the Release Sites by remediation of the carcinogenic Substances that have contaminated those communities.

42.     To this day, one or more of the Monsanto Defendants and their consultants are actively engaged in a campaign of deception to mislead the residents and real property owners of communities adjacent to the Release Sites, including the Plaintiffs, into believing that the Substances do not present, and have never presented, any threat to the residents or to the real property of those adjacent communities.

Complaint
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

8

## PERSONAL INJURY CLAIMS

### COUNT I – Personal Injury
### Negligence

43.     The Personal Injury Plaintiffs repeat, reallege, and adopt by reference thereto, as if fully set forth in this Count I, paragraphs 1 through 42, inclusive, of this Complaint.

44.     Defendants had a duty to operate the Release Sites and to conduct their actions in relation thereto with ordinary care to prevent the release of Substances into the environment.

45.     Defendants had a duty to operate the Release Sites and to conduct their actions in relation thereto with ordinary care so as to avoid damaging and injuring the Personal Injury Plaintiffs due to exposure to Substances released from the Release Sites into the environment.

46.     Defendants breached their duties of care by negligently operating and managing the Release Sites, by negligently exposing the Personal Injury Plaintiffs – *i.e.*, the residents of communities adjacent to the Release Sites – to the Substances Defendants were releasing into the environment, and by failing to warn the Personal Injury Plaintiffs about the hazardous nature of the Substances Defendants were releasing into the environment from the Release Sites.

47.     Defendants' negligent acts and omissions have proximately caused and continue to proximately cause damage and injury to the Personal Injury Plaintiffs in the form of breast cancer and other serious and life-threatening diseases.

### COUNT II – Personal Injury
### Strict Liability

48.     The Personal Injury Plaintiffs repeat, reallege, and adopt by reference thereto, as if fully set forth in this Count II, paragraphs 1 through 42, inclusive, of this Complaint I.

49.     Defendants' activities caused releases of Substances from the Release Sites into the environment.

50.     The Releases:

Complaint                                                                          9
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

A.   Created and still create a high degree of risk of harm to others, and particularly to the Personal Injury Plaintiffs.

B.   Created and still create a risk involving likelihood that the harm would be great.

C.   Created and still create a risk of harm that could not be eliminated by the Personal Injury Plaintiffs by the exercise of reasonable care.

D.   Were not and are not matters of common usage.

E.   Were and are inappropriate to the place that they were and are being carried on, in that they constituted and continue to constitute a non-natural use of the Release Sites which imposed and continues to impose an unusual and extraordinary risk of damage and injury to the residents of adjacent communities including the Personal Injury Plaintiffs.

F.   The usefulness and value of the Substances manufactured and/or released at the Release Sites were far outweighed by their danger to the residents of the adjacent communities, including the Personal Injury Plaintiffs. This is true, in part, because there were and are suitable substitutes for the PCBs manufactured at the Monsanto Facility and released from all of the Release Sites.

51.   The Substances released from the Release Sites into the environment constituted and continue to constitute a hidden hazard not readily discernible by the general public, and the Personal Injury Plaintiffs did not know or have reason to know about this hazard.

52.   In releasing Substances from the Release Sites into the environment, the Defendants were engaged in ultra-hazardous activities.

53.   As a direct and proximate result of the ultra-hazardous activities described above, the Personal Injury Plaintiffs have sustained and continue to sustain damage and injury precisely of the kind which made the Defendants' release of Substances from the Release Sites into the environment ultra-hazardous; *i.e.*, breast cancer and other serious and life-threatening diseases.

Complaint                                                                                          10
_____, *et al v. Cerro Flow Products, Inc., et al*
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

## COUNT III – Personal Injury
## Nuisance

54.     The Personal Injury Plaintiffs repeat, reallege, and adopt by reference thereto, as if fully set forth in this Count III, paragraphs 1 through 42, inclusive, of this Complaint.

55.     The general public including the Personal Injury Plaintiffs have a right to have the environment of their communities free from contamination by Substances manufactured and/or released by Defendants from the Release Sites.

56.     Defendants' release of Substances from the Release Sites into the environment substantially and unreasonably interfered with and continues to substantially and unreasonably interfere with the lives and health of the Personal Injury Plaintiffs.

57.     Defendants' release of Substances from the Release Sites into the environment proximately caused and continues to proximately cause damage and injury to the Personal Injury Plaintiffs in the form of breast cancer and other serious and life-threatening diseases

58.     Defendants' past and continuing releases of Substances from the Release Sites into the environment constitute a continuing nuisance.

## COUNT IV – Personal Injury
## Battery

59.     The Personal Injury Plaintiffs repeat, reallege, and adopt by reference thereto, as if fully set forth in this Count IV, paragraphs 1 through 42, inclusive, of this Complaint.

60.     Defendants' release of Substances from the Release Sites into the environment resulted in the deposit of substances onto the bodies of the Personal Injury Plaintiffs and resulted in the invasion of the Substances into the bodies of the Personal Injury Plaintiffs without the consent, permission or authority of the Personal Injury Plaintiffs.

61.     The conduct of the Defendants that resulted in the Substances being deposited on to the bodies of the Personal Injury Plaintiffs and invasion into the bodies of the Personal Injury

Complaint                                                                                      11
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

Plaintiffs was performed willfully, wantonly, and with a reckless disregard of the rights of the Personal Injury Plaintiffs.

62.    Defendants' release of Substances from the Release Sites into the environment, and their consequent presence on and within the bodies of the Personal Injury Plaintiffs constitutes battery.

63.    Defendants' battery upon the Personal Injury Plaintiffs has proximately caused and continues to proximately cause damage and injury to the Personal Injury Plaintiffs in the form of breast cancer and other serious and life-threatening diseases.

## PROPERTY DAMAGE

### COUNT V – Property Damage
### Negligence

64.    The Property Damage Plaintiffs repeat, reallege, and adopt by reference thereto, as if fully set forth in this Count V, paragraphs 1 through 42, inclusive, of this Complaint.

65.    Defendants had a duty to operate the Release Sites and to conduct their actions in relation thereto with ordinary care to prevent the release of Substances into the environment.

66.    Defendants had a duty to operate the Release Sites and to conduct their actions in relation thereto with ordinary care so as to avoid contaminating the Real Property owned by the Property Damage Plaintiffs due to exposure to Substances released from the Release Sites into the environment.

67.    Defendants breached their duties of care by negligently operating and managing the Release Sites, by negligently exposing the Real Property owned by the Property Damage Plaintiffs – *i.e.*, the owners of Real Property located in communities adjacent to the Release Sites – to the Substances Defendants were releasing into the environment, and by failing to warn the Property Damage Plaintiffs about the hazardous nature of the Substances Defendants were releasing into the environment from the Release Sites.

Complaint                                                                                      12
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

68.     Defendants' negligent acts and omissions proximately caused and continue to proximately cause damage and injury to the Property Damage Plaintiffs in the form of the cost to remediate their Real Property to remove from that Real Property contamination by the Substances released from the Release Sites, and in the form of diminution in value of their Real Property.

## COUNT VI – Property Damage
### Nuisance

69.     The Property Damage Plaintiffs repeat, reallege, and adopt by reference thereto, as if fully set forth in this Count VI, paragraphs 1 through 42, inclusive, of this Complaint.

70.     The Property Damage Plaintiffs have a right to have the environment of their communities including their Real Property free from contamination by Substances manufactured and/or released by Defendants.

71.     Defendants' release of Substances from the Release Sites into the environment substantially and unreasonably interfered with and continues to substantially and unreasonably interfere with the use and enjoyment of their Real Property by the Property Damage Plaintiffs.

72.     Defendants' releases of Substances from the Release Sites into the environment proximately caused and continue to proximately cause damage and injury to the Property Damage Plaintiffs in the form of the cost to remediate their Real Property to remove from that Real Property contamination by the Substances released from the Release Sites, and in the form of diminution in value of that Real Property.

73.     Defendants' release of Substances from the Release Sites into the environment constitutes a continuing nuisance.

Complaint                                                                                                    13
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

## COUNT VII – Property Damage
### Trespass

74.     The Property Damage Plaintiffs repeat, reallege, and adopt by reference thereto, as if fully set forth in this Count VII, paragraphs 1 through 42, inclusive, of this Complaint.

75.     Defendants' release of Substances from the Release Sites into the environment resulted in the invasion and presence of the Substances onto and into Real Property owned by the Property Damage Plaintiffs without their permission or authority.

76.     Defendants knew or should have known, to a substantial degree of certainty, that the release of Substances from the Release Sites into the environment would result in an intrusion on Real Property owned by the Property Damage Plaintiffs.

77.     Defendants' release of Substances from the Release Sites into the environment, and their consequent presence on and within Real Property owned by the Property Damage Plaintiffs constitutes trespass.

78.     Defendants' trespass onto and within real properties owned by the Property Damage Plaintiffs proximately caused and continues to proximately cause damage and injury to the Property Damage Plaintiffs in the form of the cost to remediate their Real Property to remove from that Real Property contamination by the Substances released from the Release Sites, and diminution in value of that Real Property.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

A.     The Personal Injury Plaintiffs each request the following:

1.     Judgment against the Defendants, jointly and severally, on Counts I, II, III and IV in an amount in excess of Fifty Thousand Dollars ($50,000.00) which will reasonably and adequately compensate each Personal Injury Plaintiff for his/her injuries, plus costs of suit;

Complaint                                                                                     14
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

2. For such other and further relief as may, in the premises, be just and proper; and

3. Trial by jury on Counts I, II, III, and IV.

B. The Property Damage Plaintiffs each request the following:

1. Judgment against the Defendants, jointly and severally on Counts V, VI, and VII in the amount of Two Hundred Thousand Dollars ($200,000.00) for each Property Damage Plaintiff to compensate him/her for the cost to remove the Substances from their Real Property and diminution in value of their Real Property, plus costs of suit;

2. For such other and further relief as may, in the premises, be just and proper; and

3. Trial by jury of Counts V, VI, and VII.

## JURY DEMAND

The Plaintiffs demand trial by jury on all counts of the above-entitled action.

Paul G. Schoen

Robert Leslie Palmer (*pro hac vice* to be filed)
Alabama State Court ID No. PAL007
Environmental Litigation Group, P.C
3529 Seventh Avenue South
Birmingham, Alabama 35222
Telephone: 1-205-328-9200
Facsimile: 1-205-328-9206
bob@elglaw.com

Paul G. Schoen,
Illinois Bar No. 2501864
Schoen Walton Telken & Foster, LLC
412 Missouri Avenue
East St. Louis, Illinois 62201
Telephone: 618-274-0434
Facsimile: 618-274-8369
pschoen@schoenwalton.com

Gregory A. Cade (*pro hac vice* to be filed)
Alabama State Court ID No. CAD010
Environmental Litigation Group, P.C.
3529 Seventh Avenue South
Birmingham, Alabama 35222
Telephone: 1-205-328-9200
Facsimile: 1-205-328-9206
gregc@elglaw.com

James L. "Larry" Wright
(*pro hac vice* motion to be filed)
Texas Bar No. 22038500
One Congress Plaza
Suite 1010, 111 Congress
Austin, Texas 78701
Telephone: 512-479-0500
Facsimile: 512-473-0328
lwright@wattslawfirm.com

Complaint                                                                                      15
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

H. Gregory Harp (*pro hac vice* to be filed)
Alabama State Court ID No. HAR0299
Environmental Litigation Group, P.C.
3529 Seventh Avenue South
Birmingham, Alabama 35222
Telephone: 1-205-328-9200
Facsimile: 1-205-328-9206
gharp@elglaw.com

Mark L. Rowe (*pro hac vice* to be filed)
Alabama State Court ID No. ROW003
Environmental Litigation Group, P.C.
3529 Seventh Avenue South
Birmingham, Alabama 35222
Telephone: 1-205-328-9200
Facsimile: 1-205-328-9206
mrowe@elglaw.com

Christina E. Wall (*pro hac vice* to be filed)
Alabama State Court ID No. WAL203
Environmental Litigation Group, P.C.
3529 Seventh Avenue South
Birmingham, Alabama 35222
Telephone: 1-205-328-9200
Facsimile: 1-205-328-9206
cwall@elglaw.com

## ATTORNEYS FOR PLAINTIFFS

[1]. Drinker, Cecil K., and others, "The Problem of Possible Systemic Effects From Certain Chlorinated Hydrocarbons," THE JOURNAL OF INDUSTRIAL HYGIENE AND TOXICOLOGY Vol. 19 (September, 1937), pages 283-311.

[2]. TOXICOLOGICAL PROFILE FOR PCBs, U.S. Department Of Health And Human Services, Public Health Service, Agency for Toxic Substances and Disease Registry, November 2000.

[3]. TOXICOLOGICAL PROFILE FOR CHLORINATED DIBENZO-*P*-DIOXINS, U.S. Department Of Health And Human Services, Public Health Service, Agency for Toxic Substances and Disease Registry, December 1998.

[4]. TOXICOLOGICAL PROFILE FOR 2,3 BENZOFURAN, U.S. Department Of Health And Human Services, Public Health Service, Agency for Toxic Substances and Disease Registry, September 1992.

[5]. Wilson, R.H., McCormick, W.E., *Plastics: The Toxicology of Synthetic Resins*, AMA ARCHIVES OF INDUSTRIAL HEALTH 21:536-548 (1960).

Complaint                                                                                          16
_____, et al v. Cerro Flow Products, Inc., et al
In the Circuit Court of the Twentieth Judicial Circuit
St. Clair County, Illinois

IN THE CIRCUIT COURT OF
THE TWENTIETH JUDICIAL CIRCUIT
ST. CLAIR COUNTY, ILLINOIS

MARTHA CUSTER; JANICE LYNN McCORN;           )
BRENDA MARIE BRINKLEY; GERLADINE LEWIS;      )
LAURA   MAE   CHAMBERS;   EVELYN   JUNE       )     Case No.  09-L-295
NICHOLSON;  RUBY  LOUISE  DAVIS;  MAXINE      )
MARIE WILLIS;  JACQUELYN CANADA; RETHA        )     Personal Injury:
MAE CONNORS; MARY HELEN JONES JOYNER;         )     Count   I – Negligence
ROSALIND MARIE HOLTON; PATRICIA JOHNSON;      )     Count  II – Strict Liability
BETTY   JEAN   JOHNSON;   ZOLINDA   GAII      )     Count III – Nuisance
CHAMBERLAIN; WERDONA KIMBERLY DOUGLAS;        )     Count IV – Battery
HELEN JEAN BROADEN; THERESA HULL; BERNICE     )
GREEN; MINNIE RINTHY ROSTON; and PAMELA R.    )     Property Damage:
HILL, all of whom are individuals residing in Illinois,  )     Count   V – Negligence
                                              )     Count  VI – Nuisance
Plaintiffs,                                   )     Count VII – Trespass
                                              )
          vs.                                 )
                                              )
CERRO   FLOW   PRODUCTS,   INC.,   a   Delaware   )
corporation with its principal place of business located in  )
Illinois; PHARMACIA CORPORATION, a Delaware   )
corporation; SOLUTIA, INC., a Delaware corporation;  )
PFIZER,   INC.,   a   Delaware   corporation;   and   )
MONSANTO AG PRODUCTS, LLC, a Delaware limited  )
liability company;                            )
                                              )
Defendants.                                   )

## AFFIDAVIT IN COMPLIANCE WITH ILLINOIS SUPREME COURT RULE 222(b)

STATE OF ILLINOIS      )
                       ) SS.
COUNTY OF ST. CLAIR    )

          Paul G. Schoen, after first being duly sworn upon oath, deposes and states that the

total amount of damages sought in this case exceeds Fifty Thousand Dollars

($50,000.00).

                                              _____
                                              Paul G. Schoen

Subscribed and sworn to before me this 5th day of June
2009.

                                              _____
                                              Notary Public

OFFICIAL SEAL
MARGARET DEATHERAGE
Notary Public - State of Illinois
My Commission Expires Apr 02, 2013